UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JANELLE MASSEY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 22-3924** |
| **JUDGE BENEDICT J. WILLARD,** **AS EMPLOYMENT SUPERVISOR AND IN HIS PERSONAL CAPACITY, AND CRIMINAL DISTRICT COURT ORLEANS PARISH** | **SECTION "B"(5)** |

<u>**ORDER AND REASONS**</u>

Before the Court are defendant Orleans Parish Criminal District Court's 12(b)6 motion to dismiss first supplemental and amending complaint (Rec Doc. 19), and plaintiff's opposition (Rec. Doc. 27). For the following reasons,

**IT IS HEREBY ORDERED** that the defendant's motion to dismiss is **GRANTED**.

<u>**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**</u>

Jannelle Massey graduated from Southern University Law Center in 2002, and following the bar exam, was hired by Judge Benedict Willard at the Orleans Parish Criminal District Court ("OPCDC") as a law clerk. Rec. Doc. 14 at 2. In July of 2011, Massey was diagnosed with Multiple Sclerosis ("MS") and in 2014, "transitioned to using a walker because she was pregnant and concerned about her balance." *Id.* at 3. However, her condition progressively worsened, and by 2017 Massey had developed drop foot, causing her difficulty in lifting the front of her foot and leaving her unable to drive. *Id.* Whereas Massey contends that until 2017 her unofficial duties included "running Judge

1

Willard's personal errands, picking up his children from school, taking Judge Willard's children to eat after school, setting up for campaign parties at Judge Willard's home . . . ," among others, these duties ceased when she could no longer drive. *Id.* at 4. At that point the minute clerk, Lawrence Dejan, assumed these duties and allegedly "would berate Massey because her 'crippled ass' could no longer drive.'" *See id.* at 4-5.

According to Massey, her MS only affected her lower extremities, and throughout her time with the court, her cognitive function along with her abilities to type, write, and communicate were not affected. *Id.* at 3. However, Massey further alleges that beginning at the time where she was no longer able to drive, she "was harassed by Judge Willard, Dejan, and secretary Judith Thomas . . . ." *Id.* at 4. Massey also states that "Judge Willard would tell [her] to 'get that thing out' of his courtroom," in reference to her walker. *Id.* In 2019, after Massey called out sick due to a medication interaction, Judge Willard, through a text message exchange with Massey, expressed that they needed "to discuss the reality of [her] health and wellness along with a discussion of disability." *Id.* at 5. Massey expressed her desire to continue working at the OPCDC and the necessity of her medical insurance; however, Judge Willard reiterated that "[d]isability payments and insurance need to be explored." *See id.*

2

Later in the year due to the New Orleans Jazz & Heritage Festival ("Jazz Fest"), Judge Willard decided to close his chambers for various days, including Thursday, April 25, Friday, April 26, Thursday, May 2, and Friday, May 3. *See id.* at 6. On April 26, 2019, "Massey was emergently hospitalized for sepsis due to a urinary tract infection," and was not discharged until April 30. *See id.* She did not return to work for the rest of the week. *See id.* On Sunday, May 5, 2019, Judge Willard texted Massey "inform[ing] her that she could not return to work without medical clearance," on a phone call on May 6, 2019, Massey alleges that Judge Willard told her "I can't take this anymore. We can't take it. We have to move on. You either seek disability or find employment elsewhere." *Id.* That same day, Judge Willard submitted a letter to Robert Kazik, the Judicial Administrator of Criminal Court, advising him that Massey potentially needed long-term therapy, and with the uncertainty of when she would return, he would need a temporary law clerk. Rec. Doc. 27-1 at 7. On May 8, Massey returned to her office to gather her belongings, and "[s]he tendered a letter indicating that she will seek her rights pursuant to the Family Medical Leave Act."[1] *See* Rec. Doc. 14 at 6-7; Rec. Doc. 27-1 at 8, 11. On

---

[1] In her complaint, Massey alleges that "Judge Willard ordered Massey to type and sign a request for Family Medical Leave Act (FMLA) leave and apply for disability," and "[f]earful of not having an income or medical benefits for herself and her five-year-old daughter, Massey complied with Judge Willard's order." Rec. Doc. 14 at 7.

August 5, 2019 Jude Willard submitted a letter to Kazik stating that "Janelle Massey has been on emergency medical leave since May 2019. It is my understanding that she is in the process of seeking long-term disability. Because 12 weeks have passed since May 1, 2019 it is time to remove her from pay-roll." Rec. Doc. 14 at 10. However, Massey contends she was never officially on FMLA leave and that she "was forced to file for disability retirement . . . ," which was approved on June 27, 2019. *Id.*

On November 15, 2019, Massey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), which issued a notice of right to sue on July 19, 2022. *See id.* at 14-15. Massey filed her original complaint in this Court on October 14, 2022, naming Judge Benedict Willard and the Orleans Parish Criminal District Court as defendants. *See* Rec. Doc. 1. Then on November 26, 2022, Massey filed her amended complaint alleging that she was discriminated against and terminated on account of her disability, in violations of the Americans with Disabilities Act. *See* Rec. Doc. 1 at 13. On December 6, 2022, the Orleans Parish Criminal District Court filed the instant motion to dismiss claiming sovereign immunity under the Eleventh Amendment of the United States Constitution. *See* Rec. Doc. 19. Massey filed her opposition to the motion to dismiss o December 26, 2022. *See* Rec. Doc. 27. As relief, she seeks monetary relief for her alleged damages, attorney fees,

4

litigation costs, and equitable relief. *See* Rec. Doc. 14 at 15-16.

## II. LAW AND ANALYSIS

### A. Motion to Dismiss Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Varela v. Gonzales*, 773 F.3d 704, 707 (5th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 556 U.S. at 556).

When deciding whether a plaintiff has met its burden, a court "accept[s] all well-pleaded factual allegations as true and interpret[s] the complaint in the light most favorable to the plaintiff, but '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot

5

establish facial plausibility." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678) (some internal citations and quotation marks omitted). Plaintiffs must "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Eleventh Amendment Immunity

The Eleventh Amendment of the United States Constitution states that, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI. This amendment provides for sovereign immunity, which "is an immunity from *suit* . . . not just liability." *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). To determine "whether an entity is entitled to Eleventh Amendment immunity, we 'must examine the particular entity in question and its powers and characteristics as created by state law . . . .'" *Clark v. Tarrant Cnty, Tex.*, 787 F.2d 736, 744 (5th Cir. 1986) (quoting *Laje v. R.E. Thomason Gen. Hosp.*, 665 F. 2d 724, 727 (5th Cir. 1982)). However, this immunity "does not extend . . . to units of local government." *Bd. Of trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 369 (2001) (citing *Lincoln Cnty. v.*

6

*Luning*, 133 U.S. 529, 530 (1890)); *see also Jacintoport Corp. v. Greater Baton Rouge Port Comm'n*, 762 F.2d 435, 438 (1985) ("independent local political subdivisions are not entitled to [sovereign] immunity even though they exercise a 'slice of state power'."). The Court considers six factors when determining if an entity is an arm of the state and thus entitled to Eleventh Amendment sovereign immunity:

1. Whether the state statutes and case law view the agency as an arm of the state;
2. The source of the entity's funding;
3. The entity's degree of local autonomy;
4. Whether the entity is concerned primarily with local as opposed to statewide, problems;
5. Whether the entity has the authority to sue and be sued in its own name; and
6. Whether the entity has the right to hold and use property.

*See Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999) (citing *Clark*, 787 F.2d at 744). These factors need not all be present, and are not weighed equally. *See id.* at 681-82. In fact, "it is well established that the second is the most important." *See id.* at 682 (citing *Delahoussaye v. City of New Iberia*, 937 F.2d 144, 147-48 (5th Cir. 1991)).

The court in *LaFrance v. City of New Orleans*, performed a thorough analysis of these six *Clark* factors. *See LaFrance v. City of New Orleans*, No. 16-CV-14439 (E.D. La. June 19, 2017), ECF No. 29. In addressing the first factor, the court reasoned that the "OPCDC was created by state statute[,] La. Stat. Ann. §

7

13:1335," and through the state constitution, was vested "with original jurisdiction of all civil and criminal matters, including exclusive jurisdiction of felony cases." *Id.* at 5 (internal quotations omitted) (first citing LA. CONST. art. V, § 16; and then citing *Mullins v. State*, 387 So. 2d 1151, 1152 (La. 1980)).

The court begins its analysis of the second factor by stating that the "legislature provides significant funds to finance the state judiciary," and that La. Rev. Stat. § 13:5108.1, obligates the state "to indemnify employees of judicial district courts of the state [and] the offices of the judicial administrators thereof." Plaintiff cited to no authority that provided that any judgment rendered "must be satisfied from local funds." *See id.* at 5-6. Finally, in support of the first factor, the court collected cases that demonstrate that "caselaw uniformly has held state courts immune." *Id.* at 6.

When addressing the third factor, the court held that the "OPCDC has limited local autonomy," as the "OPCDC chiefly applies state criminal laws passed by the Louisiana legislature," and various state statutes govern "how much vacation time judges receive, . . . how judges are reimbursed for office supplies, . . . and how cases are allotted among judges." *Id.* at 7.

Then in finding that the "OPCDC is primarily concerned with statewide problems," the court reasoned that the "[OPCDC] is part of a statewide system of district courts empowered to enforce state criminal statutes," and that "[t]he administrative choice to divide the state into several judicial districts, and place a district court in each, does not alter this conclusion." *Id.* at 7-8.

The court acknowledged that the "OPCDC has the authority both to own property and to sue and be sued," the court found these factors to carry less weight than the others. *Id.* at 8 (citing *Hudson*, 174 F.3d at 682). Finding that all other factors weighed in favor of the OPCDC being concerned an arm of the state, the court held that the OPCDC was entitled to Eleventh Amendment sovereign immunity. *See id.*

Here, while plaintiff argues that her case can be distinguished from Section 1983 actions, such as *LaFrance*, the *Clark* analysis remains unchanged. *See* Rec. Doc. 27 at 12-13. However, in the interest of justice, the Court will analyze all six factors.

1. **Whether the state statutes and case law view the agency as an arm of the state**

The first *Clark* factor weighs in favor of finding the OPCDC an arm of the state. Courts have routinely held that the OPCDC is an arm of the state and entitled to Eleventh Amendment

9

Immunity. *See, e.g.*, *Reynolds v. Criminal District Court Orleans Parish*, No. 22-CV-1009, 2022 WL 4391517, at *2-3 (E.D. La. May 19, 2022); *Cain v. City of New Orleans*, No. 15-CV-4479, 2016 WL 2742374, at *1 (E.D. La. May 11, 2016) (holding the OPCDC is entitled to immunity under the Eleventh Amendment, and collecting cases demonstrating that "[c]ourts in this and other circuit routinely hold that state courts are immune from suit under the Eleventh Amendment."); *Lafrance*, No. 16-CV-14439 (E.D. La. June 19, 2017), ECF No. 29 (performing an analysis of the six *Clark* factors). The plaintiff attempts to distinguish the cited Section 1983 cases as cited by defendant in support of this factor, by arguing that:

> [N]one of the Section 1983 cases cited by Criminal Court relate in any way to a judge and/or judicial administrator's creation of false employment record in an attempt to hide wrongful termination of an employee on account of her disability, which . . . is exactly what Judge Willard and Kazik did to Massey."

*See* Rec. Doc. 27 at 12-13. However, Massey's argument is unpersuasive. Whereas the cited cases may be Section 1983 lawsuits, it is overwhelming clear that various courts have treated judicial district courts, including the OPCDC, as arms of the state for purposes of Eleventh Amendment immunity. *See, e.g.*, *Cain*, 2016 WL 2742374, at *1 (collecting cases); *Lafrance*, No. 16-CV-14439 (E.D. La. June 19, 2017), ECF No. 29, at 6 (same). The fact that this case is brought under the Title I of

10

the ADA, does not change this Court's analysis, and plaintiff points to no authority to suggest as much. Further, the court in *LaFrance* conducted a complete *Clark* factor analysis and yielded the same result. *See Lafrance*, No. 16-CV-14439 (E.D. La. June 19, 2017), ECF No. 29, at 4-8.

Additionally, as the court in *LaFrance* stated, the OPCDC was created and is governed by the state legislature. *See* La. Rev. Stat. § 13:1335 *et seq.* Plaintiff attempts to distinguish the OPCDC from the other forty-one judicial districts by arguing that "[t]he legislature separately created Criminal Court for the Parish of Orleans, the only one of its kind in the State," and that the City of New Orleans lists the OPCDC under its "Parish Offices" on its website. *See* Rec. Doc. 27 at 8. However, the Court rejects this argument. The OPCDC was created by the state legislature, not local legislature, in order to achieve a state purpose. Further as defendant points out and plaintiff fails to address, employees, such as Massey, receive retirement benefits paid by the Louisiana State Employees' Retirement System, which defines eligible employees as "any person legally occupying a position in the state service." *See* Rec. Doc. 19-1 at 7. Overall, statues view the OPCDC as an arm of the state.

### 2. The source of the entity's funding

The second factor "The source of the entity's funding," is considered to be the most significant factor and contemplates

11

"whether a judgment against it will be paid with state funds." *See Delahoussaye*, 937 F.2d at 148 (internal quotations omitted) (quoting *McDonald v. Bd. Of Miss. Levee. Comm'rs*, 832 F.2d 901, 907 (5th Cir. 1987)). Based on the City of New Orleans 2022 Annual Operating Budget, plaintiff claims that the OPCDC is self-funded through its general fund; however, this does not appear to be correct. According to the Budget, the "General Fund is the general operating fund of the City," and "[a]ll general tax revenues and general receipts that are not allocated by law or contractual agreement to another fund are accounted for in the General Fund." Further, according to the Budget, the general fund is used for three purposes, (1) Criminal District Court Personnel, (2) jury meals, and (3) Criminal District Court Programs. There is no evidence that the money allocated through the General Fund to the OPCDC is also available to satisfy any judgment against the OPCDC.

The 2019 Audit Report of the OPCDC attached to plaintiff's amended complaint states that the OPCDC "participates in an insurance risk pool sponsored by the State of Louisiana, office of Risk Management." Rec. Doc. 14-3 at 24. Plaintiff argues that "[a]ny judgment against Criminal Court will be paid from insurance coverage obtained through payments of premiums through its adopted annual budget and not from State fund," however the Court rejects this argument. Rec. Doc. 27 at 11. The Office of

12

Risk Management ("ORM") was created by the state legislature and is "the administrator of the risk management program of the state[.]" La. Rev. Stat. § 39:1528 *et seq*. The ORM is charged with "managing all insurance covering property and liability exposure of the state," and is self-funded through "all premiums paid by state agencies . . . ." La. Rev. Stat. § 39:1528; La. Rev. Stat. § 39:1533. Further, this Self-Insurance Fund, is a special fund created in the Louisiana Department of the Treasury. La. Rev. Stat. § 39:1533. For claims covered by the ORM's Self-Insurance Fund, "representation of the state and state agencies . . . shall be provided by the attorney general or by private legal counsel appointed by the attorney general[.]" La. Rev. Stat. § 39:1533(B). Here, counsel for the OPCDC is private legal counsel appointed by the attorney general being paid by the State of Louisiana through the ORM. Rec. Doc. 19-1 at 9 n.19.

Plaintiff attempts to argue that "the State is not obligated to indemnify either [Judge Willard or the OPCDC] under La. R.S. 42:1441.1 and La. R.S. 13:5108.1(1), and, thus, would not be obligated to pay a judgment on their behalf." Rec. Doc. 27 at 13. However, it is unclear how La. Rev. Stat. § 1441.1 would apply in this situation as it related to "Nonimposition of master-servant liability on state by Civil Code Article 2320 and other laws for torts of persons not designated state officials,

13

officers or employees by R.S. 13:5108.2," and the OPCDC cannot be said to be a person. Whereas plaintiff's argument discusses this statute in terms of Kazik, Kazik is not a party to this lawsuit and was never named a defendant in his individual or official capacity. Similarly, La. Rev. Stat. § 5108.1 relates to "Indemnification of officers and employees of the state; civil rights; representation by attorney general," and here, while plaintiff presents her argument in terms of Kazik, the OPCDC is the named defendant, and is not an officer or employee of the state, but it is an entity of the state.

In making her arguments for these statutes, plaintiff makes a few perplexing statements. Particularly that "as to Judge Willard and Kazik, their employers, the Louisiana Supreme Court and Criminal Court, respectively, *will not likely be held liable* for their intentional and *ultra vires acts* . . . ." Rec. Doc. 27 at 14. It seems as though here, plaintiff is arguing that that OPCDC cannot be held liable for the actions of Kazik, but in plaintiff's complaint, she argues that the OPCDC is liable through its judicial administrator Kazik. Now plaintiff admits that Kazik "was not engaged in the performance of his duties as the judicial administrator," which begs the question, why did plaintiff name the OPCDC as a defendant? *See id.;* Rec. Doc. 14 at 12.

### 3. The entity's degree of local autonomy

14

The third factor further weighs in favor of finding the OPCDC to be an arm of the state. Whereas the OPCDC has some local autonomy as suggested by plaintiff,[2] the "OPCDC chiefly applies state criminal laws passed by the Louisiana legislature." *See LaFrance*, No. 16-CV-14439 (E.D. La. June 19, 2017), ECF No. 29, at 7. Additionally, the OPCDC judges are heavily governed by state statues regarding their vacation time, reimbursements for office supplies, and case allotment. *See id.* (first citing La. Rev. Stat. § 13:1342; then citing La. Rev. Stat. § 13:1341.2; and then citing La. Rev. Stat. § 13:1343). Further, the state constitution allows the Louisiana Supreme Court, "upon recommendation by the Judiciary Commission of Louisiana . . . . '[to] censure, suspend with or without salary, remove from office or retire involuntarily a judge for willful misconduct relating to his official duty . . . .'" Rec. Doc. 19-1 at 10 (quoting La. Const. art. V, § 25). Whereas the OPCDC has some limited local autonomy, it largely primarily functions under the control of the state, leading this factor to weigh in favor of Eleventh Amendment immunity.

### 4. Whether the entity is concerned primarily with local as opposed to statewide, problems

---

[2] Plaintiff states that the OPCDC has the power to: "generate revenue; invest; generate interest income; enter into contracts and leases; adopt its own annual budget; procure its own insurance coverage through the payment of premiums . . . ; hold pledged securities in its name; participate in the 'multiple-employer' defined Louisiana State Employees' Retirement System, or 'LASERS'; and obtain grants, federal and otherwise." Rec. Doc. 27 at 10.

Concerning the fourth factor, plaintiff seemingly does not directly address this factor; however, plaintiff alleges that the OPCDC is a parish entity, and the Court will consider this as plaintiff contending that the OPCDC is concerned with local problems. *See* Rec. Doc. 27 at 8-9. Plaintiff argues that the OPCDC has "exclusive jurisdiction of the trial and punishment of all crimes, misdemeanors, and offenses committed within the parish of Orleans . . . ." *id.* at 8 (internal quotations omitted) (quoting La. Rev. Stat. § 13:1336). Further, plaintiff supports this contention by stating that the City of New Orleans designates the OPCDC as a parish office on its website. However, the Court finds these arguments unavailing. As defendant notes, while the OPCDC is limited by territorial boundaries, it is charged with "exercising exclusive jurisdiction over all violation of *State* criminal law which occur within Orleans Parish, and therefore does address 'statewide problems.'" *See* Rec. Doc. 19-1 at 11. "The administrative choice to divide the state into several judicial districts, and place a district court in each, does not alter this conclusion." *LaFrance*, No. 16-CV-14439 (E.D. La. June 19, 2017), ECF No. 29, at 8 (citing *Clark*, 798 F.2d 745). This factor weighs in favor of finding the OPCDC to be an arm of the state.

> **5. Whether the entity has the authority to sue and be sued in its own name; and Whether the entity has the right to hold and use property.**

16

The last two factors carry less weight than the other factors, and can be addressed "in a fairly brief fashion." *Hudson v*, 174 F.3d at 682, 691 (citations omitted). Plaintiff presents no authority regarding the fifth factor, whether the entity can sue or be sued in its own name, and the Court is not aware of any such authority. This factor weighs in favor of finding Eleventh Amendment immunity. However, regarding the sixth factor, plaintiff argues, and defendant concedes that the OPCDC does have the right to hold and use property. *See* Rec. Doc. 19-1 at 11; Rec. Doc. 27 at 10. This factor weighs against finding immunity under the Eleventh Amendment.

The factors overwhelmingly support a finding that the OPCDC is entitled to Eleventh Amendment sovereign immunity as an arm of the state.

### C. Exemptions

Eleventh Amendment sovereign immunity does not preclude a lawsuit where the state has waived immunity or Congress abrogates the state's immunity. *See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670-71 (1999). Here, there is no evidence that the state has waived immunity or consented to this suit, "[i]n fact, Louisiana explicitly maintains its sovereign immunity by statute." *See Kirkwood v. Dep't of Pub. Safety & Corr.*, No. 15-CV-6981, 2016 WL 3476801, at *2, *2 n.12 (E.D. La. June 25, 2016) (citing La.

17

Rev. Stat. § 13:5106(A)) ("No suit against the state or a state agency or political subdivision shall be instituted in any court other than a Louisiana state court."). Further, the Supreme Court of the United States has held that the passage of the ADA did not abrogate the sovereign immunity of states and that claims brought against states under Title I of the ADA are barred by the Eleventh Amendment, therefore plaintiff cannot demonstrate Congress abrogated the state's sovereign immunity here. See *Garrett*, 531 U.S. at 360.

Because defendant Orleans Parish Criminal District Court is an arm of the state and entitled to Eleventh Amendment immunity, and the state has neither consented to this suit nor has Congress abrogated sovereign immunity with regard to the Americans with Disabilities Act, plaintiff's claims against defendant Orleans Parish Criminal District Court must be **DISMISSED.**

New Orleans, Louisiana this 7th day of August, 2023

_____
SENIOR UNITED STATES DISTRICT JUDGE